UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRACI SIMPSON,
Plaintiff,
v.
COUNTY OF SANTA CLARA,
Defendant.

Case No. 26-cv-04957-NC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: ECF 12

Plaintiff Traci Simpson filed this lawsuit against her former employer, the County of Santa Clara, alleging racial discrimination, retaliation, § 1983 violations, and defamation. Defendant moves to dismiss the complaint. This ruling assumes the reader's familiarity with the facts, the applicable legal standards, and the arguments made by the parties.

For the reasons stated below, the Court GRANTS in part and DENIES in part Defendant's motion. The Court GRANTS Defendant's motion as the following claims with leave to amend:

- Discrimination and failure to prevent; and
- Section 1983 based on equal protection, a property interest in her continued employment, and a stigma-plus theory related to the "Fitness for Duty Leave–Pending Outcome" designation.

United States District Court
Northern District of California

The Court DENIES Defendant's motion as to Plaintiff's other claims.

# I. DISCUSSION

## A. Plaintiff Exhausted Her Title VII Racial Discrimination Claim

Plaintiff's EEOC/CRD charge alleged (1) race discrimination for denial of equal pay and access to information systems, and (2) retaliation for reporting harassment and discrimination. RJN, Ex. A at 9.[1] Defendant only challenges whether Plaintiff exhausted her racial discrimination claim. ECF 12 at 12–14.

In order to establish subject matter jurisdiction over a Title VII claim, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC. *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). If a later complaint "seeks judicial relief for claims not listed in the original EEOC charge, the complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge." *Id.* (internal quotation marks omitted). A claim is like or reasonably related to the allegations in the EEOC charge when the allegations of discrimination either "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotation marks omitted).

In determining whether this standard is met, courts consider "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002).

Defendant asserts that, though Plaintiff filed her charge after being placed on

[1] Defendant requests the Court take judicial notice of Plaintiff's February 4, 2025, CRD/EEOC complaint, and her August 26, 2024, and December 22, 2025, government claims. ECF 13. Plaintiff does not oppose. ECF 15 at 18. The Court finds these documents are appropriate for judicial notice. *See Adetuyi v. City and Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1081–81 (2014)(granting request for judicial notice of EEOC charge); *Grewal v. City of Palo Alto*, No. 5:23-cv-00802-PCP, 2025 WL 690389, at *4 n.3 (N.D. Cal. Mar. 4, 2025) ("Courts routinely conclude that . . . government claims [pursuant to the California Government Claims Act] are proper subjects of judicial notice.") (citation omitted).



United States District Court
Northern District of California

administrative leave, "the charge did not allege the placement was racially motivated." ECF 12 at 13. But each claim in Plaintiff's complaint need not be alleged in the EEOC charge to be actionable. This is unlike *Freeman*, where the plaintiff's charge narrowly addressed discriminatory conduct in relation to a faculty election and his complaint then alleged discrimination in the context of teaching assignments, class size, and the handling of a dispute regarding workday length. 291 F.3d at 637. There, the court held that plaintiff's "allegations, which surfaced for the first time in [hi]s First Amended Complaint, clearly would not have been necessary to, or addressed in, the scope of an investigation into the conduct of the FAC elections." *Id.*

Here, the CRD's actual investigation demonstrates that Plaintiff's allegations in the complaint are reasonably related to those in the charge. The CRD asked Defendant to provide, for example: Plaintiff's performance evaluations and disciplinary documentation, Defendants' practices regarding discipline and dismissal, a list of suspended employees who had reported harassment or discrimination, and names of all employees who worked under Plaintiff's supervisors who were treated as she was under similar circumstances. RJN, Ex. A at 5–6. Plaintiff's discrimination claims fall within the scope of, and can reasonably be expected to grow out of, these investigative questions. Further, the complaint and charge are related, as shown by Plaintiff's allegations that she was subjected to shifting job expectations. Compl. ¶¶ 20, 26, 27. The charge should be construed "with utmost liberality." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990). Accordingly, the Court finds Plaintiff exhausted her administrative remedies as to her racial discrimination claim.

**B. The Complaint States a Claim for Title VII and FEHA Retaliation**

"To succeed on a retaliation claim, [a plaintiff] must first establish a prima facie case [by] demonstrat[ing] (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision." *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (citing *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513–14 (9th Cir. 1989)).

The Ninth Circuit has long held that "a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII," but instead "must only show that she had a reasonable belief that the employment practice she protested was prohibited under Title VII." *Id.* The standard for a retaliation claim under FEHA is substantially similar. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042–43 (2005).

As to the first element, "[c]onduct constituting a 'protected activity' includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and engaging in other activity intended to oppose an employer's discriminatory practices." *Hoko v. Transit Am. Servs.*, No. 14-cv-01327-LHK, 2014 WL 3963033, at *23 (N.D. Cal. Aug. 13, 2014) (citing *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003)). Plaintiff alleges she engaged in protected activity by "opposing race discrimination within SSA; raising race-equity concerns about SSA's treatment of employees on multiple occasions; filing a formal complaint with the County's Equal Opportunity Division in January 2024 alleging race discrimination and retaliation; disclosing to County Counsel and SEIU the unlawful practice of requiring low-wage, predominantly minority employees to work without pay; and filing a charge with the EEOC." Compl. ¶¶ 78, 98. Plaintiff engaged in protected activity by filing a complaint with the County and a charge with the EEOC.

However, Plaintiff's conduct connected to her role as Employee Relation Manager and Civil Rights Coordinator does not constitute protected activity. "[A]n employee does not receive special protection under Title VII simply because the employee handles discrimination complaints or works on affirmative action matters . . . . 42 U.S.C. § 2000e–3(a) does not prevent an employer from dismissing an employee who handles discrimination complaints as part of his job when the employee handles these complaints contrary to the instructions of his employer." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1082 (9th Cir. 1996). The Court is not convinced that Plaintiff's actions "consistent with her job duties" constitute protected activity. Compl. ¶¶ 28–30, 33, 34, 36, 38, 41, 43.



United States District Court
Northern District of California

The anti-retaliation provision of Title VII "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant . . . . [T]hat means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Plaintiff alleges that, in retaliation for her protected activity, Defendant placed her on administrative leave, designated her leave as "Fitness for Duty–Pending Outcome" without notice, commissioned an investigation into her conduct, eliminated her position, forced her to transfer, and terminated her employment. Compl. ¶¶ 79, 99. The parties do not appear to dispute that Plaintiff has sufficiently alleged an adverse employment decision, so the Court proceeds to the last element. ECF 12, 15, 16.

As for the causation element, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Plaintiff alleges that the temporal proximity between her April 2024 disclosures and placement on administrative leave shortly after evidences a causal connection. Compl. ¶¶ 80, 100. The Court does not agree, as stated above, that actions taken consistent with her job duties constitutes protected activity. However, Plaintiff's January 2024 formal complaint and 2025 EEOC charge constitute protected activity and were, respectively, three months from her leave placement and four months from her termination. These allegations are sufficient to demonstrate causation at this early stage in the case. *See Pringle v. Wheeler*, 478 F. Supp. 3d 899, 918 (N.D. Cal. 2020) (citing *Johnson v. Alameda-Contra Costa Transit Dist.*, No. 4-cv-4879 MMC, 2006 WL 2587293, at *7 (N.D. Cal. Sept. 8, 2006) (citation omitted) (temporal proximity of three to four months supports inference of retaliation).

United States District Court
Northern District of California

Defendant contends the EEOC charge cannot demonstrate causation because Plaintiff had already been on leave for the conduct that justified her termination. ECF 16 at 6. But whether that is true is a disputed fact to be decided on summary judgment or at trial rather than a motion to dismiss. Accordingly, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss Plaintiff's retaliation claims. The motion is granted only as to Plaintiff's actions undertaken as part of her job duties which do not constitute protected activity.

**C. The Complaint States Claim for Failure to Prevent Retaliation**

Plaintiff's failure to prevent discrimination and retaliation claim is derivative of those underlying claims. *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015) (cleaned up); *see also Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1098–99 (E.D. Cal. 2017) ("Because plaintiff's FEHA disability discrimination claim survives defendant's motion to dismiss, her failure to prevent discrimination claim survives the motion as well."). As discussed above, Plaintiff's retaliation claim is sufficient, so the Court DENIES Defendant's motion to dismiss this claim on that basis. However, as discussed under section E (i) below regarding Plaintiff's § 1983 equal protection claim, Plaintiff has not alleged a discrimination claim, so the Court GRANTS Defendant's motion on that basis.

**D. The Complaint States a § 1102.5 Claim**

Section 1102.5 of the Labor Code provides that an employer may not retaliate against an employee who discloses information she reasonably believes reveals "a violation of state or federal statute [or regulation]" to a "person with authority over the employee . . . who has the ability to investigate, discover, or correct the violation." To state a § 1102.5 claim, Plaintiff must allege facts supporting an inference that she engaged in a protected activity and was subjected to an adverse employment action, and there was a causal link between the protected activity and the adverse employment action. *Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1252 (2008).

Unlike Plaintiff's Title VII and FEHA retaliation claim, Plaintiff's performance of her job duties does not preclude this claim because § 1102.5 specifically prohibits retaliation against employees "regardless of whether disclosing the information is part of the employee's job duties." *Mazik v. Kaiser Permanente, Inc.*, No. 19-cv-00559-DAD-KJN, 2024 WL 584162, at *16 n.19 (E.D. Cal. Feb. 13, 2024) (quoting Labor Code § 1102.5(b)). So, Plaintiff engaged in protected activity on April 10, 2024, by reporting alleged wage violations to County Counsel and Steve Fondacaro, the Central Services Director who placed Plaintiff on leave, Compl. ¶¶ 23, 108. *See Khan v. SAP Labs, LLC*, No. 18-cv-07490-BLF, 2020 WL 4349852, at *3 (N.D. Cal. July 29, 2020) (citing *Cordell v. PICC Lines Plus LLC*, No. 16-cv-01814-TEH, 2016 WL 4702654, at *5 (N.D. Cal. Sept. 8, 2016)) ("[P]rotection under section 1102.5(b) is, in fact, available to employees who report internally to supervisors or to other employees with authority to investigate alleged misconduct."). There is no reason to find, as Defendant urges, that Plaintiff's disclosure was focused on an internal, interpersonal dispute. ECF 12 at 26.

The parties agree that Plaintiff's claim is actionable based on the June 2025 termination recommendation and August 2025 final termination. ECF 12 at 25–26; ECF 15 at 12. However, the parties dispute whether Plaintiff has sufficiently alleged causation. If a plaintiff does not offer direct evidence of retaliatory intent, the "causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000) (internal quotation marks and citation omitted). But unlike Title VII and FEHA, § 1102.5(b) requires only that the protected activity be a "contributing factor" to the adverse employment action. *See Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal.5th 703, 718 (2022). As stated above, the Court found that Plaintiff alleged a sufficient causal connection between her protected activity and adverse employment actions. The same is true here. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's § 1102.5 claim.

### E. Plaintiff Alleges a § 1983 Claim Based on a Stigma-Plus Liberty Interest

#### *i. Plaintiff Does Not Allege a Due Process Violation Based on Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws" and therefore requires the state to treat all "similarly situated" people equally. *See Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an "intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). That is, a plaintiff must show that the defendant acted in a "discriminatory manner" and that the discrimination was "intentional." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003). "Intentional discrimination" means that a defendant acted "at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). A plaintiff may make out a prima facie case of discrimination by demonstrating that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Ballou v. McElvain*, 29 F.4th 413, 422 (9th Cir. 2022).

The complaint fails to allege the fourth element. Plaintiff alleges that similarly situated non-African American employees who engaged in comparable or more significant conduct were treated more favorably. Compl. ¶¶ 70, 91, 159. While Plaintiff need not provide specific comparators at this stage, as Defendant suggests, this allegation is too cursory to survive a motion to dismiss. Plaintiff must plead that those non-African American employees were similarly situated to her in all material respects. *See Ardalan v. McHugh*, No. 13-cv-01138-BLF, 2014 WL 3846062, at *8 (N.D. Cal. Aug. 4, 2014) (citing *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)) (finding that Plaintiff's "cursory pleading that, in general, European and Eastern European employees

of DLI were treated better than Middle Eastern and Asian employees of DLI d[id] not suffice" to state a claim); *Keenan v. Shinseki*, No. 10-cv-3473-KJM, 2012 WL 394162, at *3 (E.D. Cal. Feb. 6, 2012) (plaintiffs failed to state a claim where they did not allege that comparator (1) engaged in the same conduct, and (2) received more favorable treatment because he was not in the protected class). Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's § 1983 claim on this basis.

***ii. Plaintiff Fails to State a Procedural Due Process Violation based on a Property Interest in her Continued Employment***

A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected property or liberty interest, and (2) a denial of adequate procedural safeguards. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). In a case brought by a discharged employee, the employee must show: (1) the deprivation of a property right in continued employment, and (2) the denial of appropriate procedural protections during termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 542 (1985).

Plaintiff has alleged that she was a permanent employee and could be dismissed only for cause. Compl. ¶¶ 17, 160. "Public employees who may be dismissed only for cause possess a property interest in their continued employment." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011); *Dorr v. Butte Cnty.*, 795 F.2d 875, 876 (9th Cir. 1986) (citations omitted) ("[A] 'permanent employee,' dismissible only for cause, has a property interest in [her] continued employment which is protected by due process.").

Second, Plaintiff must show that she was denied adequate procedural protections. *Brewster*, 149 F.3d at 982; *Loudermill*, 470 U.S. at 538. "Due process requires that any deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Walls*, 653 F.3d at 968 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected

property interest in his employment." *Loudermill*, 470 U.S. at 542 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972)); *see also Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 332 (9th Cir. 1995) (holding that "the denial of a pre-termination hearing is a constitutional violation sufficient to support damages"). "[T]he pretermination 'hearing,' though necessary, need not be elaborate." *Loudermill*, 470 U.S. at 545.

Plaintiff has failed to allege that she was denied a hearing prior to her discharge. She alleges that Defendant's investigation discounted her testimony and failed to credit the nature of her role, Compl. ¶ 47, implying that Plaintiff was notified of the charges against her, reasons for the employer's evidence, and an opportunity to present her side of the story. *Loudermill*, 470 U.S. at 546. "[T]he root of this requirement is that an individual have the opportunity to be heard before [s]he is deprived of his property interest." *Walls*, 653 F.3d at 968. It appears that Plaintiff was given such an opportunity here. Plaintiff also alleges that Defendant terminated her employment without progressive discipline and failed to conduct a neutral, meaningful pre-termination process. Compl. ¶¶ 159, 161. Plaintiff has not provided case law suggesting that either of those issues demonstrate denial of adequate due process. Plaintiff must allege more facts to make this claim plausible.

Finally, Plaintiff must show municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Plaintiff must demonstrate one of the following three bases to assert municipal liability: (1) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (2) the decision-making official was a final policymaking authority; or (3) an official with final policymaking authority either delegated the authority to, or ratified the decision of, a subordinate. *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quotation and citations omitted omitted).

Plaintiff alleges that Defendant has a longstanding practice or custom in complaint handling and racially disparate outcomes for African American employees as evidenced by

Defendant's audits documenting such. Compl. ¶¶ 57, 69, 90, 117. These allegations are sufficient at this stage to state a claim. Defendant argues that the audits are unrelated to Plaintiff because they did not pertain to her department, did not examine Plaintiff's employment data or complaints, and did not cover the time she was employed. ECF 12 at 14, 20. Those are disputes better resolved at summary judgment or trial, rather than at this early stage in the case.

Plaintiff has not sufficiently alleged municipal liability under the final policymaker theory. A local government can be liable for an official's conduct when "the official (1) had final policymaking authority concerning the action alleged to have caused the particular constitutional or statutory violation at issue and (2) was the policymaker for the local governing body for the purposes of the particular act." *Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (quotation marks and citation omitted). Plaintiff alleges that County executives decided to put her on leave, eliminate her position, and terminate her employment. Compl. ¶ 157. Plaintiff only specifically mentions Daniel Little, the SSA Director, who issued the Recommended Disciplinary Action letter. *Id.* ¶ 50. The Court recognizes that Plaintiff likely lacks necessary discovery to plead this theory more fully. However, these allegations are too conclusory, and Plaintiff must include some more facts to make this theory plausible. Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's procedural due process claim with leave to amend.

***iii. Plaintiff States a Procedural Due Process Violation based on a Stigma-Plus Liberty Interest***

Plaintiff also premises her procedural due process claim on a stigma-plus liberty interest theory. When a plaintiff "has suffered a tangible loss[,] a liberty interest is implicated only when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365 (9th Cir. 1976). Charges impairing a plaintiff's "reputation for honesty or morality" are sufficient to implicate a liberty interest. *Vanelli v. Reynolds Sch. Dist. No.*

*7*, 667 F.2d 773, 777 (9th Cir. 1982). "The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Id.* at 777–78; *see Ulrich*, 308 F.3d at 982.

Plaintiff alleges that Defendant disclosed to County Employees Management Association (CEMA) and Zeb Feldman that Plaintiff had released confidential information, was insubordinate, and violated policy. Compl. ¶ 136. These allegations plausibly assert each element of a stigma-plus procedural due process claim.

Plaintiff argues that Defendant designating her as being on "Fitness for Duty Leave–Pending Outcome" is also a basis for this claim because it implies that Plaintiff was medically or psychologically unfit for work. ECF 15 at 15. The Court disagrees because the designation, only shared internally, is not a public disclosure nor does it impair her reputation for honesty or morality. Accordingly, the Court GRANTS in part and DENIES in part Defendant's motion on this basis.

**F. The Complaint States a Defamation Claim**

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (2016). The parties agree that only the June 27, 2025, statement can form the basis of Plaintiff's defamation claim.

Plaintiff alleges that Defendant "disclosed Plaintiff's confidential disciplinary information via email to Zeb Feldman and [CEMA], an entity that did not represent Plaintiff and had no legitimate need to receive information regarding her personnel or disciplinary status," including "false or misleading statements of fact, including that Plaintiff released confidential information, was insubordinate on multiple occasions, and violated county policy." Compl. ¶ 136.

As an initial matter, these allegations are specific enough to put Defendant on notice of Plaintiff's defamation claim. It is true that, to plead a defamation claim, "[t]he general

rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 n.5 (1991). However, a plaintiff "need not 'state the exact words' of the alleged defamation," as long as she "'alleg[es] the substance of the defamatory statement.'" *Alghusain v. Webb*, No. 24-cv-01863-JSC, 2025 WL 1643791, at *9 (N.D. Cal. June 10, 2025) (quoting *Okun v. Superior Ct.*, 29 Cal. 3d 442, 458 (1981)). Plaintiff has done so here by identifying the June 27, 2025, email sent to Zeb Feldman and CEMA and specific statements therein. Compl. ¶ 136.

The publication element of a defamation claim requires a communication of the allegedly defamatory statement "to a third person who understands its defamatory meaning as applied to the plaintiff." *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003), as modified (Dec. 22, 2003). This statement was published to CEMA and is defamatory because it contains provable falsehoods—that Plaintiff released confidential information, was insubordinate, and violated county policy. *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 685 (2017); *see Bowles v. Constellation Brands, Inc.*, 444 F. Supp. 3d 1161, 1175 (E.D. Cal. 2020) (collecting cases finding that statements regarding a plaintiff's work performance are actionable).

By statute, California law provides that a "privileged publication" is one made "without malice[ ] to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code § 47(c).

California courts have emphasized that this privilege

> applies where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest, which must be something other than mere general or idle curiosity, such as where the parties to the communication share a contractual, business[,] or similar relationship or [where] the defendant is protecting his [or her] own pecuniary interest.

*Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 949 (2017) (internal quotation

marks and citations omitted). "[D]efendant generally bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to plaintiff to establish that the statement was made with malice." *Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007).

Defendant contends the statements to CEMA are subject to the "common-interest privilege" because Plaintiff's own union should not be considered a third party and the privilege protects supervisors who share employee information related to termination. ECF 12 at 24; ECF 16 at 9. But Defendant has not explained why or pointed to any case law suggesting that CEMA, which Plaintiff alleges does not represent her, Compl. ¶ 136, should be considered to have a common interest in her termination or is reasonably entitled to know the information. It is not clear that Defendant and CEMA have a business or contractual relationship. *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 440, (2007).

Further, while it is true that the privilege protects supervisors who share employee termination information to other employees or prospective employers, the privilege does not widely protect supervisors who share employee termination information with unrelated third parties. *See* Cal. Civ. Code § 47(c); *Bowles*, 444 F. Supp. 3d at 1177 (collecting cases noting that privilege applies to statements made to other employees or prospective employers). *Miglani* does not alter this analysis because there the defamatory statement was made internally to another supervisor. *Miglani v. Edwards Lifesciences, LLC*, No. 17-cv-00418-JLS-DFM, 2018 WL 6265007, at *7 (C.D. Cal. Jan. 8, 2018).

At this stage, Plaintiff has stated a claim for defamation though Defendant may later produce evidence of a relationship with CEMA. The Court also notes that, though Defendant failed to carry its' burden such that Plaintiff need not show that the statement was made with malice, Plaintiff has not alleged enough to make that showing. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's defamation claim.

United States District Court
Northern District of California

## II. CONCLUSION

Accordingly, the Court GRANTS in part and DENIES in part Defendant's motion. The Court GRANTS Defendant's motion as the following claims with leave to amend:

- Discrimination and failure to prevent; and
- Section 1983 based on equal protection, a property interest in her continued employment, and a stigma-plus theory related to the "Fitness for Duty Leave–Pending Outcome" designation.

The Court DENIES Defendant's motion as to Plaintiff's other claims.

By November 19, 2026, Plaintiff may amend or file notice that she does not seek to amend. Plaintiff may not add any additional parties or claims without leave of Court. Defendant need not answer the complaint while waiting for Plaintiff's November 19, 2026, response. Rather, Defendants must answer or respond within twenty-one days after Plaintiff's November 19, 2026, filing.

**IT IS SO ORDERED.**

Dated: November 5, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge